# IN THE COURT OF APPEALS OF IOWA

No. 25-0125
Filed April 9, 2025

**IN THE INTEREST OF A.F.,**
**Minor Child,**

**A.V., Mother,**
        Appellant.
_____

Appeal from the Iowa District Court for Grundy County, Michelle Jungers, Judge.

A mother contests the termination of her parental rights to her two-year-old son. **AFFIRMED.**

Luke C. Jenson of Jenson Law Firm, PLC, Waterloo, for appellant mother.

Brenna Bird, Attorney General, and Lisa Jeanes, Assistant Attorney General, for appellee State.

Kelly Jo Smith, Waterloo, attorney and guardian ad litem for minor child.

Considered without oral argument by Tabor, C.J., and Schumacher and Chicchelly, JJ.

**TABOR, Chief Judge.**

A mother, Amber, challenges the juvenile court order terminating her parental rights to her two-year-old son, A.F. That court found Amber's substance use and unmet mental-health needs prevented her from safely resuming custody of A.F. After carefully considering the record, we reach the same conclusions as the juvenile court and affirm the termination order.[1]

## I. Facts and Prior Proceedings

A.F.'s umbilical cord tested positive for methamphetamine and marijuana at his birth in August 2022. That positive test prompted the Iowa Department of Health and Human Services to start safety planning with the family. But voluntary services turned into a child-in-need-of-assistance (CINA) adjudication in September 2023 after A.F.'s father assaulted Amber in the child's presence. The department also received reports that both parents were using illegal substances while caring for the child. In the CINA order, the juvenile court ordered the parents to participate in random drug testing. The court also ordered Amber to comply with recommendations for substance-use and mental-health treatment. Because the court found that A.F. was not safe in his parents' custody, the department placed him in family foster care.

Over the next seven months, Amber did little to address her methamphetamine addiction. Despite a substance-use evaluation recommending

---

[1] Our review is de novo. *In re M.H.*, 12 N.W.3d 159, 160 (Iowa Ct. App. 2024). That level of scrutiny means that we examine the entire record, finding our own facts and adjudicating rights anew on issues properly before us. *Id.* Still, we respect the juvenile court's factual findings, especially credibility judgments. *Id.*

residential treatment, Amber left the inpatient facility after just one day.[2]  She also balked at the drug-testing regime required by the department.  In April 2024, the social worker confronted Amber over missing scheduled tests.  Amber responded that she was "too busy and it is none of the department's fucking business what she is doing."

Beyond her substance-use disorder, Amber failed to address her mental-health needs.  As the juvenile court found, she was "argumentative and verbally abusive to various individuals involved in the case throughout the case."  A prime example occurred in March 2024 when she threatened a service provider and either threw or kicked a chair during a supervised visit with A.F.  The department social worker called the police, who helped deescalate the situation.  Despite documentation by the department, Amber denied the aggressive incident in her trial testimony.

As for visitation, after that incident, Amber did not see A.F. in person for four months—from April to August 2024.  But after visitation resumed, Amber was generally "attentive and loving" to A.F. during the sessions—with exceptions.  The social worker recalled Amber showing frustration with her son if he was "cranky or tired."  Case in point, at a visit in September 2024, Amber threatened to hit the two-year-old if he hit her.

On top of those issues, Amber lacked stability in both housing and employment.  At trial, Amber testified that she had little motivation to secure

---

[2] The report following her November 2023 evaluation noted that Amber met the DSM-V criteria for amphetamine-type substance use disorder severe; cannabis use disorder severe; sedative, hypnotic, or anxiolytic use disorder, severe; and alcohol use disorder, severe, but in early remission based on her self-report.

housing after A.F.'s removal. She also testified that she was "not opposed to getting a job, it's just everything this year has been whacked."

The juvenile court terminated A.F.'s legal relationship with both parents. Only Amber appeals.

## II.    Analysis

The juvenile court terminated Amber's parental rights under Iowa Code section 232.116(1), paragraphs (h) and (*l*) (2024). Amber disputes those grounds for termination and asks for six more months to achieve reunification. We will address each of those claims in turn.

### A.  Statutory Ground for Termination

When the juvenile court relies on more than one paragraph, we may affirm "on any ground . . . supported by the record." *In re A.B.*, 815 N.W.2d 764, 774 (Iowa 2012). We rest our decision on paragraph (h).

Under that provision, the juvenile court could terminate parental rights if the State offered clear and convincing evidence of these elements:

> (1) [A.F.] is three years of age or younger.
> (2) [A.F.] has been adjudicated a [CINA] pursuant to section 232.96.
> (3) [A.F.] has been removed from the physical custody of [his] parents for at least six months of the last twelve months, or for the last six consecutive months and any trial period at home has been less than thirty days.
> (4) There is clear and convincing evidence that [A.F.] cannot be returned to the custody of [his] parents as provided in section 232.102 at the present time.

Iowa Code § 232.116(1)(h).

Amber contests only the fourth element. She argues that termination was improper because she "has shown she has the ability to adequately care for her child." We find her argument unconvincing for three reasons.

First, she has not adequately addressed her sobriety. Nothing suggests that Amber's diagnosis for severe substance-use disorder expired during this CINA case. To the contrary, her volatility during visits with A.F., her defensiveness over drug testing, and her instability in housing and employment all suggest that the disorder persisted. The juvenile court also credited social workers' observations that Amber's behavior and appearance revealed substance use, including "a sunken face, incoherent speech, anger outbursts and exaggerated mannerisms." The court also noted: "Some of these behaviors were exhibited at the time of trial. Throughout much of the trial, Amber was gesticulating, audibly outspoken during others testimony, and left the courtroom at one point. She also continued to have a sunken face." We defer to those factual findings.

Second, the record shows that Amber has not followed recommendations that she address her mental-health diagnoses, including posttraumatic stress disorder (PTSD) and depression. Amber acknowledged her avoidance: "My PTSD I don't like to touch on because it's a lot. It triggers me, and I don't like being in that mood." As the juvenile court observed: "If Amber is not abusing substances, it is possible that her behaviors are attributed to her unmet mental health needs."

And third, Amber was not in the position to offer A.F. a secure home at the time of the trial. *See In re D.W.*, 791 N.W.2d 703, 707 (Iowa 2010) ("The record does not provide any evidence that [the child] could safely be returned home with [the parent] at the time of the termination hearing."). She was staying with a friend

and had no source of income to support herself and her child. Amber excuses her instability by arguing that "her main priority of improving her mental health and visiting her child trumped her attempts at obtaining employment and independent living."

We appreciate that parents face stress when trying to meet the department's expectations for resuming custody of a child. But parenting itself is a stressful undertaking. And if A.F. were placed back in Amber's custody, she would not have a choice between tending to her mental health and providing for the family's needs. Both priorities would be imperative. After reviewing this record, we find clear and convincing proof that A.F. could not be safely returned to Amber's custody.

**B. Delay in Permanency**

Amber next argues that the juvenile court should have granted her request to defer termination. To allow a parent more time, the juvenile court must find that the need for removal will be gone at the end of a six-month extension. *See* Iowa Code § 232.104(2)(b). This record does not support a delay in permanency. *See In re W.T.*, 967 N.W.2d 315, 323 (Iowa 2021) (explaining parents must not only show impediments to returning child to their custody will be resolved in six months, but also that further delay is in the child's best interests).

A.F. had been out of the home for over a year at the time of the termination trial. Meanwhile, Amber logged little progress in managing her substance-use disorder, her mental-health struggles, or her overall stability. In speaking to A.F.'s best interests, his guardian ad litem (GAL) urged the court to deny Amber's request to delay permanency. The GAL noted that Amber did not have "housing,

employment, or the ability to provide full time care for this child." The GAL continued: "The mother struggles with age-appropriate expectations, and becomes frustrated, during the visitation she has at this time. Based upon the history of the last fourteen months, it is very unlikely that any additional time will prove to resolve any of these issues." We agree with the GAL's assessment. The juvenile court's decision to terminate Amber's parental rights was the proper resolution given the facts presented.

**AFFIRMED.**